IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Julie Goffstein, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Case No. 1:16-cv-341 |
| | : | |
| v. | : | Judge Susan J. Dlott |
| | : | |
| Honorable Jon H. Sieve, Judge of the | : | Order Granting Motion to Dismiss |
| Court of Common Pleas, Domestic | : | |
| Relations Division, Hamilton County, | : | |
| Ohio, | : | |
| | : | |
| Defendant. | : | |

This matter is before the Court on Defendant's Motion to Dismiss (Doc. 6).  Plaintiff Julie Goffstein alleges in this suit that Defendant Jon H. Sieve, a judge of the Hamilton County, Ohio Court of Common Pleas, Domestic Relations Division, violated her due process and First Amendment religious rights and the rights of her six children when he issued child custody decisions in favor of her former husband.  Judge Sieve has moved to dismiss Julie Goffstein's claims pursuant to Rule 12 of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.  For the reasons that follow, the Court will **GRANT** the Motion to Dismiss.

I.     BACKGROUND

A.     Marital History

The relevant facts are derived from the well-pleaded allegations in the Complaint (Doc. 2).  Julie Goffstein and non-party Peter Goffstein are the parents of six minor children:  J.G., J.G.(2), A.G., E.G., L.G., and A.G.(2).  (*Id.* at PageID 32.)  They practiced Orthodox Judaism and belonged to a religious sect known as Chabad or Lubavitch.  (*Id.*)  They adhered to strict Jewish laws and traditions regarding dietary considerations, clothing, hairstyle, and religious

1

practices. (*Id.* at PageID 32–33.) Their four younger children attended religious day schools and their two high school age children attended religious high schools called Yeshivas. (*Id.*) They supplemented that education with online secular courses. (*Id.* at PageID 32.)

**B.     State Court Divorce Proceedings**

Julie Goffstein filed for divorce from Peter Goffstein on July 2, 2010 in the Domestic Relations Division of the Hamilton County, Ohio Court of Common Pleas. (*Id.* at PageID 33.) The divorce case was assigned to Judge Sieve. (*Id.*) Peter Goffstein filed for custody of the four youngest children. (*Id.*) Peter Goffstein had stopped practicing Orthodox Judaism by this time. He wanted the children removed from the religious day schools and Yeshivas. (*Id.*) He forbid the children from following the Chabad practices and traditions. (*Id.* at PageID 33–34.) On June 21, 2012, Judge Sieve initially awarded custody of the six children to Julie Goffstein. (*Id.* at PageID 34.) Judge Sieve made references in his ruling to Julie Goffstein's religious practices and the extent to which she was raising the children in her religious tradition. (*Id.*) Julie Goffstein did not provide the Court with a copy of that state court decision.

Peter Goffstein moved for reallocation of custody on March 11, 2013. (*Id.*) Judge Sieve issued a decision on May 22, 2013 reversing the early custody determination. (*Id.*) Judge Sieve granted Peter Goffstein custody of the four younger children. (*Id.*) Judge Sieve permitted the younger children to continue in religious schools through eighth grade, but only for so long as Julie Goffstein could pay the tuition. (*Id.*) Julie Goffstein could not afford to pay the religious school tuition. (*Id.*) Judge Sieve granted Julie Goffstein custody of the two older children, but gave Peter Goffstein authority to make their educational decisions. (*Id.* at PageID 34–35.) Julie Goffstein admits that Judge Sieve "couched his decision . . . in terms of [her] failure to follow court orders," but she asserts that Judge Sieve's actual reason was dissatisfaction with her choice

to send the children to religious schools. (*Id.* at PageID 35–36.) Judge Sieve concluded that it was in the best interests of the children to fulfill their "secular education requirements[,]" despite hearing testimony from a rabbi that enrolling the children in public schools would be against Orthodox teaching. (*Id.*; Doc. 2-3 at PageID 49–50.)

Julie Goffstein thereafter moved the two older children with her to a larger Orthodox Jewish community in New York. (*Id.* at PageID 36.) Peter Goffstein permitted the older children to continue to attend religious schools. (*Id.*)

On June 20, 2013, Julie Goffstein appealed the May 22, 2013 decision to the Ohio First District Court of Appeals. (Doc. 2 at PageID 36.) The court of appeals dismissed the appeal in 2014 because Judge Sieve had not issued a final appealable order. (*Id.* at PageID 37.)

While the initial appeal was pending, on April 2, 2014, Judge Sieve issued another custody decision further restricting Julie Goffstein's rights. Judge Sieve stated in the order that Julie Goffstein had engaged in a pattern of conduct intended to alienate the children from Peter Goffstein. (Doc. 2-4 at PageID 59.) He noted that Julie Goffstein had testified that Peter's Goffstein's decision to send the younger children to public school violated her religious beliefs and that she would not act in violation of her religious beliefs. (*Id.*) He concluded that "Mother's firm stance cannot be reconciled with the best interests of the children." (*Id.*)

On June 24, 2014, Judge Sieve issued a final decree of divorce incorporating the most recent custody and education orders. (Doc. 2 at PageID 37.) Julie Goffstein appealed that divorce decree. (*Id.* at PageID 37–38.) On November 6, 2014, Judge Sieve further restricted Julie Goffstein's access to her children. (*Id.* at PageID 38.) On October 30, 2015, the Ohio appeals court affirmed the divorce decree issued by Judge Sieve. (Doc. 6-1 at PageID 130–36.)

Julie Goffstein filed a notice of appeal with the Ohio Supreme Court, but the Ohio Supreme Court declined to hear the appeal on March 9, 2016. (Doc. 6-1 at PageID 137–39.)

**C.    Federal Court Proceedings**

Julie Goffstein initiated this lawsuit on February 29, 2016 by filing a Complaint (Doc. 1) against Judge Sieve on behalf of herself and her six minor children. The core of her suit is a claim that Judge Sieve has violated their religious rights under the Constitution:

> Judge Sieve's decisions are based on direct violations of the First and Fourteenth Amendments to the U.S. Constitution in that they impinge on the children's right to freely practice their religion and Mrs. Goffstein's right to practice her religion and to educate her children as she sees fit, including the right to place them in religious school. Judge Sieve's custody and education rulings specifically tie Mrs. Goffstein's practice of her religion, and her passing her religion on to her children, to the children's best interests and impose a secular education on the children. These decisions directly interfere with both the children's rights to freely practice their religion and Mrs. Goffstein's right to practice her religion and to educate her children as she sees fit, including the right to send her children to religious school. Mrs. Goffstein's religious practices led directly to her loss of custody of the younger four children and to the removal of those children from religious school, as well as the grant to Mr. Goffstein of the right to remove the older two boys from religious school at his sole discretion. Judge Sieve has no right to interfere with Mrs. Goffstein's right to practice her religion as she sees fit nor does Judge Sieve have the right to interfere with the childrens' freedom to practice their religion. Judge Sieve's overriding goal was to send the children to a secular school, which was in violation of Mrs. Goffstein's and the children's rights. He knew that Mrs. Goffstein's religious beliefs would not abide an order sending the children to a secular school, so he ordered that custody be changed to the father in order to accomplish that goal. It is Mrs. Goffstein's practice of her religion, and the religious practices of the children, that is at the heart of Judge Sieve's rulings.

(Doc. 2 at PageID 40–41.) She asserts two causes of action. Count I is a claim for violation of due process rights including Julie Goffstein's and her children's right to "familial relationships" and Julie Goffstein's right to control the education of her children. (*Id.* at PageID 41.) Count II is a claim for a violation of their right to freely exercise and practice their religion. (*Id.* at

4

PageID 41–42.) Julie Goffstein seeks declaratory, injunctive, and other unspecified equitable relief plus costs and attorney fees. (*Id.* at PageID 42.)

Judge Sieve has filed the pending Motion to Dismiss. He asserts that the Court lacks subject matter jurisdiction over the case pursuant to the *Rooker-Feldman* doctrine, that he is entitled to judicial immunity, and that Julie Goffstein has failed to state a claim upon which relief can be granted. Julie Goffstein opposes the Motion to Dismiss.

## II. LEGAL STANDARDS FOR DISMISSAL

Rule 12(b)(1) authorizes a dismissal of a complaint where the Court lacks jurisdiction over the subject matter of the complaint. *See* Fed. R. Civ. P. 12(b)(1). The plaintiff has the burden of establishing the Court's jurisdiction when such a dismissal motion is filed under Rule 12(b)(1). *See Rogers v. Stratton Industs., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). The Court can "look beyond the jurisdictional allegations in the complaint and consider submitted evidence." *Taylor v. KeyCorp*, 680 F.3d 609, 612 (6th Cir. 2012). Additionally, the Court can to resolve factual disputes without converting a Rule 12(b)(1) motion to a motion for summary judgment. *Rogers*, 798 F.2d at 915.

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A district court "must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997). To withstand a dismissal motion, a complaint must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.   ANALYSIS

### A.   *Rooker-Feldman* Doctrine

Judge Sieve first argues that Julie Goffstein's claims are barred by application of the *Rooker-Feldman* doctrine. The doctrine derives its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The *Rooker-Feldman* doctrine "bars lower federal courts from conducting appellate review of final state-court judgments." *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012). It prevents a district court "from exercising its jurisdiction over a claim alleging error in a state court decision." *Hall v. Callahan*, 727 F.3d 450, 453 (6th Cir. 2013) (citation omitted). "[O]nly the United States Supreme Court has jurisdiction to correct state court judgments." *Marshall v. Bowles*, 92 F. App'x 283, 284 (6th Cir. 2004). *Rooker-Feldman* is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

To determine the applicability of the *Rooker-Feldman* doctrine, the district court must determine the source of the plaintiff's alleged injury. *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). "If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction[, but] [i]f there is some other source of injury, such as a third party's actions, then the plaintiff asserts an

independent claim." *Id.*[1] Moreover, the doctrine bars claims asserting that a state law was invalidly or unconstitutionally applied in the plaintiff's specific case, but it does not preclude claims challenging the general constitutionality of a state law. *Tropf v. Fid. Nat. Title Ins. Co.*, 289 F.3d 929, 937 (6th Cir. 2002).

At first blush, it appears easy to conclude that Julie Goffstein's claims are precluded by *Rooker-Feldman*. The sources of her and her children's alleged injuries are Judge Sieve's written decisions. Throughout the Complaint, Julie Goffstein alleges that his decisions impinged upon their constitutional rights. For example, she alleges that "his decision . . . rested upon [his] dissatisfaction with [her] decision to send the children to religious schools." (Doc. 2 at PageID 35.) She further alleged that "Judge Sieve's decisions . . . impinge on the children's right to freely practice their religion and Mrs. Goffstein's right to practice her religion and to educate her children as she sees fit." (*Id.* at PageID 40.) As a final example, she alleges that "[i]t is Mrs. Goffstein's practice of her religion, and the religious practices of the children, that is the heart of Judge Sieve's rulings." (*Id.* at PageID 41.)

Ohio law generally allows religious practices to be considered as a factor in the determination of the best interests of a child in custody decisions, but it forbids improper reliance on religious bias. *See Pater v. Pater*, 63 Ohio St. 3d 393, 588 N.E.2d 794, 797–98 (1992). Claims that a state law was applied unconstitutionally by a state court in a litigant's specific case are barred from review in federal district court by *Rooker-Feldman*. *Tropf*, 289 F.3d at 937. Numerous federal cases have held that *Rooker-Feldman* bars a district court from hearing claims alleging that a state court judge erred in rendering domestic relations decisions. *See e.g.*,

---

[1] The Sixth Circuit clarified in *McCormick* that the frequently used standard of whether a federal claim was "inextricably intertwined" with an earlier state court judgment should be limited to mean that only claims asserting injuries whose source is a state court judgment are barred by *Rooker-Feldman*. 451 F.3d at 394–95.

7

*Marshall*, 92 F. App'x at 284 (barring a case that amounted to "an impermissible appeal of state court judgments as it raises specific grievances regarding decisions of a Kentucky domestic relations court"); *Evans v. Yarbrough*, No. 00-3588, 2000 WL 1871706, at *2 (6th Cir. Dec. 13, 2000) ("Since Evans is merely raising specific grievances regarding decisions of Ohio's domestic relations courts, his federal case is essentially an impermissible appeal of the state court judgment."); *Catudal v. Browne*, No. 2:12-cv-00197, 2012 WL 1476088, at *2 (S.D. Ohio Apr. 24, 2012) (dismissing due process and equal protection claims against state court judges arising from their divorce and custody rulings); *Bowman v. Cortellessa*, No. CIV.A. 12-47-JMH, 2012 WL 676406, at *2 (E.D. Ky. Feb. 29, 2012) ("The *Rooker-Feldman* doctrine precludes the possibility of a federal court reaching an outcome that essentially overturns, or is inconsistent with, a decision of a state domestic relations court, even if the state court result was inaccurate or unfair."); *Zindler v. Rogers*, No. 1:11-CV-770, 2011 WL 4346393, at *6 (W.D. Mich. Aug. 23, 2011) ("[T]o the extent that plaintiff is complaining about the unfairness of the process afforded to him in the state courts in the lawsuits leading up to plaintiff's loss of custody rights or to the criminal judgment or personal protection orders, those claims are barred by the *Rooker-Feldman* doctrine."), *report and recommendation adopted*, 2011 WL 4346390 (W.D. Mich. Sept. 15, 2011), *aff'd*, 477 F. App'x 381 (6th Cir. 2012).

The proper recourse for a state court plaintiff who believes that a state court judge has relied upon an unconstitutional factor such as religious bias in rendering a decision is the state court appeals process. *See e.g.*, *Pater*, 588 N.E.2d at 797 (addressing to what extent a domestic relations court can consider the religious practices of the parent in making custody decisions); *Birch v. Birch*, 11 Ohio St. 3d 85, 463 N.E.2d 1254, 1256 (1984) (addressing the issue of whether "appellant's right to the free exercise of religion, as secured by the First and Fourteenth

8

Amendments to the United States Constitution, was violated when her religious practices were considered in making a custody determination"); *Troyer v. Troyer*, 188 Ohio App. 3d 543, 936 N.E.2d 102, 109 (2010) (addressing allegations that the trial judge improperly "considered issues of religion and morals" when making a custody decision); *Klamo v. Klamo*, 56 Ohio App. 3d 15, 564 N.E.2d 1078, 1079–80 (1988) (appealing custody decisions on the grounds that the trial court erred by allowing testimony concerning the father's beliefs as a Jehovah's Witness). Appeal of a final state court decision on constitutional grounds can be brought only in the United States Supreme Court. *See Feldman*, 460 U.S. at 482; *Marshall*, 92 F. App'x at 284.

In opposition to this persuasive body of case law suggesting that the claims here are barred by *Rooker-Feldman*, Julie Goffstein relies on *Catz v. Chalker*, 142 F.3d 279 (6th Cir. 1998), *opinion amended on denial of reh'g,* 243 F.3d 234 (6th Cir. 2001), and *Alexander v. Rosen*, 804 F.3d 1203 (6th Cir. 2015), *petition for cert. docketed*, No. 15-8710 (Mar. 25, 2016). In *Catz*, the plaintiff asserted that his procedural due process rights were violated during the course of his divorce proceedings. 142 F.3d at 293–94. He asserted that he had not received timely notice of proceedings in his Arizona divorce action. *Id.* at 282–83. The court stated that "Catz's due process allegation does not implicate the merits of the divorce decree, only the procedures leading up to it." *Id.* at 294. The court further explained that "if the court were to declare the Pima County decision void as having been secured in violation of due process, that would not itself prevent Chalker from resuming or refiling her divorce action, nor prevent the Pima County Court from coming to the same conclusion under constitutional procedures." *Id.* On this basis, the Sixth Circuit reversed a district court decision that the plaintiff's claim was barred by *Rooker-Feldman. Id.* at 290, 295; *see also Smith v. Pezzetti*, No. 03-74213, 2005 WL 5421316, at *12–14 (E.D. Mich. Apr. 4, 2005) (issuing a declaratory judgment that a state court

9

custody order was null and void because it was issued without procedural due process being afforded to the litigants).

This Court finds that *Catz* is distinguishable. The plaintiff in *Catz* alleges he was denied due process in the procedures leading up to his divorce decree. Here, Julie Goffstein states in Count I a single allegation touching on procedural due process rights:

> The actions of the defendant constitute a violation of plaintiffs' constitutional right, pursuant to the substantive and procedural due process clauses of the Fourteenth Amendment, to familial relationships, which includes the right of Mrs. Goffstein to the companionship, care, custody and management of her children, including the right to control their education and the right of the children to the companionship of their mother.

(Doc. 2 at PageID 41.) This conclusory allegation does not support a claim for violation of procedural due process rights. She does not allege that Judge Sieve failed to give her proper notice, denied her the right to present evidence, or denied her other procedural protections. Instead, she objects to the substance of his decisions. (Doc. 2 at PageID 35, 40–41) (criticizing his decisions and rulings). Because her allegations attack the merits of Judge Sieve's decisions, and not the procedures leading up to those decisions, *Catz* is distinguishable.[2]

The *Alexander* decision can be distinguished on similar grounds. In *Alexander*, the plaintiff alleged "that he was the victim of a conspiracy concocted by a federal judge, a Michigan family court judge, and several state administrative employees." 804 F.3d 1204–05. Specifically, he alleged that nine individuals who had some connection to his child support proceedings conspired to (1) impose child support obligations he did not owe, (2) provide false information about those allegations to the IRS, and (3) extort him through bribery and terror

---

[2] This same analysis supports the conclusion that Julie Goffstein has failed to allege a procedural due process claim upon which relief can be granted. The procedural due process claim is not plausible in the absence of allegations that Judge Sieve denied her due process protections such as notice, the right to be heard, *etc.* Accordingly, the Court dismisses the procedural due process claim pursuant to Rule 12(b)(6).

10

tactics. *Id.* at 1205. The plaintiff asserted claims in federal court for violations of the federal racketeering statute, federal civil rights laws, and state laws. *Id.* at 1205. The plaintiff requested that his child support payments be abated as part of his prayer for relief. *Id.* The defendants invoked the *Rooker-Feldman* doctrine in moving to dismiss the federal case. *Id.* at 1206. The Sixth Circuit held that *Rooker-Feldman* did not bar jurisdiction because the plaintiff's "alleged injury did not come from the state court judgment[,]" but instead from "the conduct of the individuals who happened to participate in that decision." *Id.* at 1206–07.[3] The allegations here are different. Julie Goffstein does not allege that Judge Sieve provided or relied upon false evidence, conspired against her with third parties, or otherwise took actions against her apart from his judicial decision. Instead, the alleged injuries she and her children suffered resulted from Judge Sieve's decisions and his reasoning in support of those decisions. (Doc. 2 at PageID 35, 40–41.)

Finally, Julie Goffstein cites a recent Northern District of Ohio case adopting and applying *Alexander*. The plaintiff in *Klayman v. Loeb*, No. 15 CV 1683, 2016 WL 29228 (N.D. Ohio Jan. 4, 2016), alleged that the magistrate judge was "biased against him due to his religious and political beliefs" and that the magistrate's decision "was a false and misleading diatribe issued . . . to chill his speech and exercise of his religion." *Id.* at *1. Klayman alleged specifically, though in conclusory fashion, that the magistrate "manufactured false facts" and "attack[ed]" his Christian beliefs. *Id.* at *3. The district court refused to dismiss Klayman's complaint on the basis of *Rooker-Feldman* because it concluded that the case was analogous to *Alexander* in that Klayman merely challenged the magistrate's conduct in making the custody

---

[3] The *Alexander* case also discusses the domestic relations exception to subject matter jurisdiction which provides generally that district courts will not hear cases that involve the issuance of a divorce, alimony, or child custody decree. 804 F.3d at 1205. The *Alexander* court noted that the Sixth Circuit has not decided if the domestic relations exception applies in only diversity cases or in both diversity and federal question cases. *Id.* In any event, Judge Sieve does not argue here that the domestic relations exception is a bar to subject matter jurisdiction in this case.

11

decision.  *Id.* at *2 (case dismissed on other grounds including judicial immunity and failure to state a claim upon which relief can be granted).  This Court will not follow *Klayman*.  Julie Goffstein does not allege here that Judge Sieve manufactured false facts.  To the extent that the *Klayman* court otherwise concluded that Klayman was not challenging the substance of the magistrate's custody decision, this Court must respectfully disagree with that analysis.

In conclusion, the Court finds that Julie Goffstein's challenge to the reasoning behind Judge Sieve's decisions is indistinguishable from a challenge to the decisions themselves.  As such, the Court lacks jurisdiction to review the merits of Judge Sieve's custody decisions.  Julie Goffstein's claims are barred by application of the *Rooker-Feldman* doctrine.

**B.     Judicial Immunity**

As an alternative basis for dismissal, Judge Sieve argues that he is entitled to judicial immunity from suit.  The Supreme Court has stated that "generally, a judge is immune from a suit for money damages."  *Mireles v. Waco*, 502 U.S. 9, 9 (1991).  Judicial immunity provides immunity from suit, not just from the ultimate assessment of damages.  *Id.* at 11.  Judicial immunity is not applicable in two circumstances:  (1) a judge is not immune for actions not taken in the judge's judicial capacity and (2) a judge is not immune for judicial actions taken in the complete absence of all jurisdiction.  *Id.* at 11–12.  There is no dispute in this case that Julie Goffstein is suing Judge Sieve for acts taken in his judicial capacity and with jurisdiction.  Namely, Julie Goffstein in suing Judge Sieve for custody rulings he made in a domestic relations action.  Judge Sieve would be entitled to judicial immunity in a suit for money damages.

However, as Julie Goffstein points out, this is not a suit for money damages.  Julie Goffstein is seeking only declaratory, injunctive, and other unspecified equitable relief.  (Doc. 2 at PageID 42.)

Congress expanded the scope of judicial immunity to bar some claims for injunctive relief through a 1996 amendment to 42 U.S.C. § 1983. "[I]n any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Courts in the Sixth Circuit have dismissed claims against state court judges for injunctive relief on the basis of § 1983. *See*, *e.g.*, *Coleman v. Governor of Mich.*, 413 F. App'x 866, 873 (6th Cir. 2011) (stating that § 1983 extends judicial immunity to suits for equitable or injunctive relief); *Rembert v. Fishburn*, No. 3:15-cv-0949, 2015 WL 5842149, at *3 (M.D. Tenn. Oct. 6, 2015) (granting judicial immunity in suit for injunctive relief); *Ciavone v. Slavens*, 2:14–13133, 2014 WL 4414504, at *3 (E.D. Mich. Sept. 8, 2014 (stating that § 1983 extends judicial immunity to suits for equitable or injunctive relief); *Kircher v. City of Ypsilanti*, 458 F. Supp. 2d 439, 446–48 (E.D. Mich. 2006) (dismissing claim where the plaintiff did not allege "that the Judicial Defendants violated a declaratory decree or that declaratory relief was unavailable at any relevant time"); *cf. Easterling v. Rudduck*, No. 1:14cv876, 2015 WL 1567844, at *5 (S.D. Ohio Apr. 6, 2015) (stating that a claim should be dismissed on the basis of judicial immunity because "[t]hat plaintiff seeks only equitable or injunctive relief has no bearing on this outcome") (Litkovitz, M.J.), *report and recommendation adopted by*, 2015 WL 2452437 (S.D. Ohio May 21, 2015).

Julie Goffstein does not address the § 1983 extension of judicial immunity to claims for injunctive relief. Instead, she cites *Catz*, *Alexander*, and *Pezzetti* as cases in which "judges have successfully been sued for injunctive or declaratory relief." (Doc. 8 at PageID 152.) However, in *Alexander* the Sixth Circuit upheld the dismissal of the claims against the state court judges on the grounds of judicial immunity, even though it had rejected dismissal of the action on *Rooker-*

13

*Feldman* grounds. 804 F.3d at 1208. In *Pezzetti*, the district court also dismissed the injunctive relief claim against the state court judge pursuant to the judicial immunity granted in § 1983. 2005 WL 5421316, at *16. This Court, likewise, agrees that the claims against Judge Sieve fail to the extent that Julie Goffstein seeks injunctive relief.

On the other hand, federal courts have treated claims against state court judges for declaratory relief differently. Section 1983 does not explicitly extend judicial immunity to claims for declaratory relief. The district court in *Pezzetti* issued a declaratory judgment that a decision issued in violation of a party's procedural due process rights was void *ab initio*. 2005 WL 5421613 at *17. Similarly, the Sixth Circuit in *Catz* permitted a claim to go forward seeking a declaratory judgment that the state court judgment was issued in violation of a party's procedural due process rights. *Catz*, 142 F.3d at 290, 295.

In light of these authorities, the Court concludes that the judicial immunity precludes Julie Goffstein's claims to the extent that she seeks injunctive relief. Judicial immunity does not bar her claims insofar as she seeks only declaratory relief, but, as explained below, the Court will decline to exercise its discretion to determine the claims for declaratory relief.

**C.     Exercise of Jurisdiction Pursuant to Declaratory Judgment Act**

The Court has discretion under the Declaratory Judgment Act whether to exercise jurisdiction over a claim seeking declaratory relief. "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . *may declare* the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201 (emphasis added). One factor a district court should consider in deciding whether to exercise jurisdiction over a declaratory judgment action is "whether the use of a declaratory action would increase friction

14

between our federal and state courts and improperly encroach upon state jurisdiction." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (listing five factors).

Relevant to this case, state courts have the primary authority to determine domestic relations issues such as custodial rights. Julie Goffstein's claims would require the Court to pass judgment upon whether Judge Sieve was motivated by an improper religious bias, or whether he simply considered religious practices as part of the matrix for determining the best interests of the children, when he made his custody decisions. *See Pater*, 588 N.E.2d at 797–98 (explaining the manner in which religion can factor into child custody decisions). State appellate courts have more experience to pass on that question. *Cf. Muhammad v. Paruk*, 553 F. Supp. 2d 893, 900 (E.D. Mich. 2008) (declining jurisdiction over declaratory judgment action against state court judge for violation of religious freedom because the exercise of jurisdiction would require the district court to conduct a "detailed examination of how [the state court judge] manages his court room"). The policy considerations underlying the application of the *Rooker-Feldman* doctrine also weigh against the Court exercising discretionary authority to issue a declaratory judgment in these circumstances.

Moreover, the Court would be remiss not to point out that, in fact, Judge Sieve's decision has been upheld by the Ohio appellate courts. (Doc. 6-1 at PageID 130–36, 139.) There is no indication in the state appellate decision whether Julie Goffstein argued that Judge Sieve's decisions violated her religious rights, but the Ohio appeals court found that Judge Sieve's determination regarding the best interests of the children was supported by the factual record. (*Id.* at PageID 132.) The Ohio Supreme Court declined to hear the appeal. (*Id.* at 139.) Julie Goffstein's recourse to challenge the state court decisions on constitutional grounds is a direct appeal to the United States Supreme Court. *See Feldman*, 460 U.S. at 482 (stating that only the

Supreme Court has "authority to review final judgments of a state court in judicial proceedings"); *Marshall*, 92 F. App'x at 284.

For these reasons, the Court will decline to exercise its discretion to hear Julie Goffstein's claims for declaratory judgment.

**IV.  CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. 6) is **GRANTED**. Plaintiff's Complaint is dismissed with prejudice.

IT IS SO ORDERED.

          S/Susan J. Dlott_____
          Judge Susan J. Dlott
          United States District Court